IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CECILIA M. SPINELLI,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **STATE FARM MUTUAL** | : | |
| **AUTOMOBILE INSURANCE CO.,** | : | |
| Defendant. | : | No. 08-1455 |
| | : | |

### MEMORANDUM AND ORDER

**Schiller, J.**                                                                                                                **March 17, 2009**

Plaintiff Cecilia M. Spinelli originally filed this action in the Montgomery County Court of Common Pleas , alleging claims for breach of contract and for bad faith, pursuant to 42 PA. CONS. STAT. § 8371. Plaintiff's bad faith claim is premised on Defendant's alleged unjustified delay of the parties' arbitration and lack of reasonable basis for denying Plaintiff's claim. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") removed the case to this Court on March 27, 2008. Currently before the Court is Defendant's Motion for Summary Judgment. For the reasons discussed below, Defendant's motion is granted.

### I.   BACKGROUND

On October 19, 1994, Spinelli was involved in a motor vehicle accident with Henry B. Brown, Jr. (Compl. ¶ 9, Def.'s Statement of Facts ¶ 8). On September 11, 1998, Spinelli's attorney Leonard Konesky, who is also her counsel in this case, notified State Farm, her automobile insurance carrier, of her demand for arbitration pursuant to her policy's underinsured motorist bodily injury coverage provision. (Compl. Ex. C [Sept. 11, 1998 letter to State Farm].) State Farm responded

on October 5, 1998, explaining that it had assigned the claim to outside counsel Fred Smith and requesting proof of Brown's policy limits, any information regarding a settlement offer, and medical documentation of Spinelli's injuries. (Def.'s Mot. for Summ. J. [hereinafter "Def.'s Mot."] Ex. 4 [Oct. 5, 1998 letter from State Farm to Konefsky].) Smith then wrote to Spinelli's attorney to confirm his representation of State Farm and identify his appointed arbitrator. (Def.'s Mot. Ex. 5 [Oct. 22, 1998 letter from Smith to Konefsky].) Over the next few months, as Smith received the medical records, State Farm claim representative Rob Petro began evaluating the claim. (Def.'s Mot. Ex. 6 [Feb. 4, 1999 Claim Evaluation].)[1] Although Spinelli's sworn statement was originally scheduled for August 4, 1999, and subsequently rescheduled on multiple occasions, it did not occur until October 23, 2000. (Def.'s Mot. Ex. 7 [Multiple letters from Smith to Konesky]; Def.'s Mot. Ex. 10 [Oct. 30, 2000 letter from Smith to Petro summarizing Spinelli's statement under oath].)

In September 2000, Konefsky wrote to Petro and requested consent to settle the underlying claim against Brown. (Def.'s Mot. Ex. 8 [Sept. 9, 2000 letter from Konefsky to Petro].) State Farm granted consent to accept an offer of $180,000 of the $192,696.34 coverage limit and Plaintiff settled with Brown. (Def.'s Mot. Ex. 9 [Sept. 26, 2000 letter from Petro to Konefsky].) On February 12, 2001, Smith wrote to Konefsky, requesting additional information and medical records and suggesting "that we may want to begin moving forward toward arbitration." (Def.'s Mot. Ex. 11

---

1. Plaintiff disputes this exhibit and the relevant portion of Defendant's statement of fact, which merely notes that Petro's evaluation of the claim and relevant medical record was prepared. (Def.'s Statement of Facts at ¶ 13.) Plaintiff challenges these items on the grounds that they do not reference State Farm's July 5, 2001 claim summary and a letter of September 13, 2000 from Plaintiff's primary physician. (Pl.'s Statement of Disputed Facts ¶ 13 & Pl.'s Resp. to Def.'s Mot. ["Pl.'s Resp."] Exs. P-1 & P-2.) Defendant State Farm can hardly be faulted for lacking the foresight, in its evaluation of February 4, 1999, to reference or consider two reports issued at least seventeen months later.

[Feb. 12, 2001 letter from Smith to Konefsky].) Konefsky sent a fax on February 13, 2001, prior to receiving State Farm's letter of February 12, 2001, in which he asserted that all requested "medical and hospital record and reports" had already been delivered to State Farm. He alleged that "State Farm has knowingly and willfully engaged in dereliction and bad faith misconduct for the purpose of prejudicing the rights of its totally and permanently disabled and crippled insured." (Def.'s Mot. Ex. 12 [Feb. 13, 2001 fax from Konefsky to Smith] at 2.) After receiving Smith's letter, Konefsky sent a second letter, which questioned why a prior Authorization executed by Spinelli was insufficient to obtain the requested information and contended that State Farm had already acknowledged receipt of the records in question. (Def.'s Mot. Ex. 13 [Feb. 16, 2001 fax from Konefsky to Smith].) Konefsky concluded by asserting:

> Your present insistence upon a newly executed Authorization and my resending of the comprehensive and copious information which you have already acknowledged as having received several months ago are clearly a continuation of the systematic course of gross dereliction and bad faith misconduct engaged in by State Farm in this matter.

(*Id.*) In response to these letters, Smith asserted that he had never received a prior signed Authorization, nor confirmed receipt of such Authorization. (Def.'s Mot. Ex. 14 [Letter of Feb. 21, 2001 from Smith to Konefsky].) He reminded Plaintiff that the policy entitled the carrier to an independent medical examination ("IME") of Plaintiff and complete medical records. (*Id.*) He noted that, if complete records had already been sent, Konefsky could simply send a letter confirming that. (*Id.*)

On May 3, 2001, Dr. Leonard Brody, an orthopedic surgeon, performed an independent medical examination of Spinelli. (Def.'s Mot. Ex. 15 [May 3, 2001 IME Report].) His report recounted that Spinelli complained of "virtual 'total body pain'" due to the 1994 accident. (*Id.* at

7.) His review of prior medical records noted that "[a]ccording to Dr. Hirshberg [Spinelli's primary physician], the patient did not have any complaints of chest pain, neck pain, or cervical radiculopathy prior to the 10/19/94 motor vehicle accident." (*Id.* at 5.) Brody stated that the patient complained of pain even when subjected to "minimal palpatory pressure," rendering an examination "close to impossible." (*Id.*) He also noted that "the patient's complaints of pain with minimal palpatory pressure and her complaints of decreased sensation in a stocking/glove distribution in the entire lower left extremity are inconsistent and have no coherent medical basis." (*Id.* at 7.) His report concluded by stating:

> In summary, it is my opinion that the patient may have suffered a short-term exacerbation of her pre-existent fibromyositis and rheumatoid arthritis after the 10/19/94 incident in question, but I simply cannot relate her current complaints of 'total body pain' to any soft tissue injuries that she may have suffered at the time of the 10/19/94 incident in question.

(*Id.*) In a May 14, 2001 supplement to this report, Dr. Brody reaffirmed this conclusion and stated that "the patient has fully recovered from this short-term exacerbation and has no residuals from it." (Def.'s Mot. Ex. 16 [May 14, 2001 IME Supplemental Report].)

Following a meeting of State Farm representatives, Smith informed Konefsky that State Farm had determined that the full value of Spinelli's claim was less than what she had already received from Brown's insurance carrier and that therefore State Farm "respectfully declines to make any offer on the underinsured motorist claim." (Def.'s Mot. Ex. 20 [July 9, 2001 letter from Smith to Konefsky].)

The parties then began to seek a neutral arbitrator and ultimately agreed upon Attorney Nathaniel P. D'Amico. (Konefsky Dep. at 38; Def.'s Mot. Ex. 22 [Nov. 6, 2001 letter from Smith to D'Amico].) D'Amico subsequently sent a letter setting the arbitration hearing for March 5, 2002.

(Def.'s Mot. Ex. 25 [Jan. 10, 2002 letter from D'Amico].)  In his Pre-Arbitration Report, Smith stated that he and State Farm had determined, based in part on the IME, that the full value of the case was less than the amount already credited, and so no recovery was expected.  (Def.'s Mot. Ex. 26 [Feb. 14, 2002 letter from Smith to Petro].)

The day prior to the scheduled arbitration hearing, D'Amico cancelled it so that he could attend a law school classmate's funeral.  (Def. Mot. Ex. 23 [D'Amico Dep.] at 33-34.)  D'Amico initially attempted to reschedule the 9:00 a.m. arbitration for the afternoon of the same day, but Smith was not available.  (*Id.*)  On March 8, 2002, Konefsky faxed to D'Amico a request that he recuse himself and, should he fail to do so, threatened to file a petition to have him removed for cause.  (Def.'s Mot. Ex. 26 [Mar. 8, 2002 fax from Konefsky to D'Amico].)  D'Amico responded by handwritten fax that same day, asking why Konefsky would request his recusal and offering eight possible dates for rescheduling.  (Def.'s Mot. Ex. 27 [Mar. 8, 2002 fax from D'Amico to Konefsky].)  Konefsky responded by fax on March 11, 2002:

> The reason for my proceeding in this regard is the gross misconduct, falsity and irresponsibility in which you engaged in the cancellation of Mrs. Spinelli's March 5th hearing which had been scheduled five (5) months earlier, and the false and frivolous reason you have therefore.  Your actions in this regard are not befitting a judicial officer and there is no question that you are not competent to conduct a fair, impartial or otherwise proper arbitration hearing in this matter.

(Def.'s Mot. Ex. 26 [Mar. 11, 2002 fax from Konefsky to D'Amico].)  In subsequent exchanges D'Amico defended his decision to attend his law school classmate's funeral and Konefsky questioned how close he was to the decedent, restating his accusation that D'Amico had cancelled "for literally no legitimate or acceptable reason."  (Def.'s Mot. Ex. 26 [Mar. 12, 2002 fax from Konefsky to D'Amico].)  D'Amico never received any criticism from Alsberg, the Plaintiff's chosen

arbitrator, nor any objections from the Defendant's arbitrator regarding the cancellation. (D'Amico Dep. at 46-47, 53-54.) Although he never formally recused himself, D'Amico eventually abandoned his efforts to serve as neutral. (*Id.* at 54.)

Shortly thereafter, Smith asked Konefsky about the status of Spinelli's claim, specifically whether Konefsky would be paying his portion of an invoice D'Amico had submitted and whether he planned to select a new arbitrator. (Def.'s Mot. Ex. 28 [May 13, 2002 letter from Smith to Konefsky].) In a series of five additional letters to Konefsky, dated between October 2002 and April 2004, Smith inquired about Konefsky's plans for the case and for the selection of a neutral arbitrator. (Def.'s Mot. Ex. 29 [Letters from Smith to Konefsky].) One letter referenced a settlement demand of $60,000 from Plaintiff, but State Farm reiterated its belief that the full value of the case had been satisfied. (Def.'s Mot. Ex. 29 [Nov. 18, 2002 letter from Smith to Konefsky].) The final two letters suggested possible arbitrators. (Def.'s Mot. Ex. 29 [Sept. 7, 2003 & Apr. 16, 2004 letters from Smith to Konefsky].) The parties ultimately agreed upon the selection of Andrew Braunfeld as neutral arbitrator. (Konefsky Dep. at 79.) Smith sent a letter to Braunfeld on June 15, 2004, requesting that he serve as neutral arbitrator and that he contact counsel to schedule the arbitration. (Def.'s Mot. Ex. 30 [June 15, 2004 letter from Smith to Braunfeld].)

On November 17, 2004, Smith wrote to Debra Augustyn, a State Farm Claim representative handling Plaintiff's claim, and summarized the medical records regarding a second motor vehicle accident Plaintiff was involved in on August 11, 2002. (Def.'s Mot. Ex. 31 [Nov. 17, 2004 letter from Smith to Augustyn].) This letter references a September 9, 2002 report from a Dr. Kovalsky, an orthopedist who saw Spinelli for neck, back and shoulder problems stemming from the 2002 accident. According to Smith's summary, Kovalsky noted that Spinelli "had been seen around 1995

6

for neck, left arm and back complaints, but notes that they resolved with conservative treatment." (*Id.*)  The new medical records were sent to Dr. Brody, the IME, for further review. (*Id.*) Dr. Brody acknowledged and analyzed the reports and noted that they did not change his prior opinion. (Def.'s Mot. Ex. 32 [Nov. 22, 2004 letter from Brody to Smith].)  In a March 8, 2005 Progress Report State Farm claim representative Deb Augustyn summarized the claim's status and again noted State Farm's belief that the claim would go to arbitration because there is no additional value beyond the underlying recovery.  (Def.'s Mot. Ex. 34 [Mar. 8, 2005 Progress Report].)

On March 31, 2005, Braunfeld scheduled the arbitration for July 13, 2005 and set deadlines for the exchange of documents.  (Def.'s Mot. Ex. 35 [Order].)  In a letter to Augustyn, Smith noted that recent medical records showed that Spinelli underwent cervical decompression surgery in March 2004, which was performed by Dr. Douglas Savage. (Def.'s Mot. Ex. 36 [Apr. 26, 2005 letter from Smith to Konefsky].)  Dr. Savage, in a letter to Konefsky, had stated, "I feel that Mrs. Spinelli's need for her recent neck surgery was directly related to her motor vehicle accident of October 19, 1994." (Pl.'s Resp. Ex. P-4 [Aug. 3, 2004 letter from Savage to Konefsky].)  Smith's letter noted that Savage made no mention of Spinelli's August 2002 accident.  (Def.'s Mot. Ex. 36.)  Dr. Brody, the IME, was asked to review the new records from Dr. Savage.  He noted that the handwritten intake sheet from Dr. Savage's office, which appeared to be written by Spinelli, mentioned the 1994 motor vehicle accident, but made no mention of the 2002 accident. (Def.'s Mot. Ex. 37 [Letter from Brody to Smith].)  He further observed that his review of Dr. Savage's records uncovered no mention of the 2002 accident, although the records regarding that accident indicated that it had caused neck injuries. (*Id.*)  The records from Dr. Savage's office did, according to Brody, include a report stating that Spinelli had "a one month history of neck pain . . . .," which Brody deemed indicative of "a

recent-onset process." (*Id.*) He concluded that the surgery performed by Dr. Savage could not have been related to the 1994 accident. (*Id.*) A new State Farm Progress Report noted that Brody did not relate the 2004 surgery to the 1994 accident. (Def.'s Mot. Ex. 38 [May 23, 2005 Progress Report].)

Spinelli was subsequently diagnosed with cervical cancer and in a June 2, 2005 letter Konefsky explained that her surgery and therapy would likely be taking place during the time scheduled for the arbitration. (Def.'s Mot. Ex. 39 [June 2, 2005 fax from Konefsky to Braunfeld].) As such, Konefsky sought a continuance, which was granted. (Konefsky Dep. at 87; Def.'s Mot. Ex. 40 [June 2, 2005 fax from Braunfeld to Konefsky].) Nonetheless, the neutral arbitrator requested that Smith and Konefsky still meet with him on the date previously set for the arbitration. According to a letter memorializing that meeting, a new arbitration date was tentatively set for October 18, 2005. It was understood that Spinelli would attend if she had sufficiently recovered, but if not that the arbitration would proceed anyway, "assuming that none of the attorneys involved are precluded from attending by virtue of court attachments and the like." (Def.'s Mot. Ex. 41 [July 13, 2005 letter from Braunfeld to Smith and Konefsky].) During this period, Konefsky demanded $85,000 to settle the case. (Pl.'s Resp. Ex. P-12 [July 15, 2005 letter from Konefsky to Smith].)

The arbitration was cancelled again, this time due to a trial attachment of Smith. (Def.'s Statement of Facts ¶ 77; Def.'s Mot. Ex. 44 [Braunfeld Dep.] at 17.) Smith subsequently sent three letters to Braunfeld requesting that a new arbitration date be set. (Def.'s Mot. Ex. 45 [Jan. 26, 2006; Feb. 2, 2006; Mar. 8, 2006 letters from Smith to Braunfeld].) A new date was set for April 27, 2006, but Smith was again attached for trial and forced to request a second rescheduling. (Def.'s Mot. Ex. 46 [Apr. 19, 2006 letter from Smith to Braunfeld].) Braunfeld contacted the judge presiding over Smith's trial to see if the trial schedule might be adjusted, but to no avail. (Braunfeld Dep. at 18.)

In May 2006, Konefsky made a new settlement demand of $45,000. (Pl.'s Resp. Ex. P-13 [May 12, 2006 letter from Konefsky to Smith].)

A new arbitration date was set for October 9, 2006. In late September, Konefsky informed Braunfeld that Spinelli had developed severe blood clots and would be unable to travel to the arbitration. Given the medical documents that defense counsel was expected to submit and the issues that would be raised, Konefsky contended that it was critical that Spinelli attend in order to testify. (Def.'s Mot. Ex. 47 [Sept. 26, 2006 fax from Konefsky to Braunfeld].) His letter also stated that "[w]hile there have been at least five (5) continuances of the hearing in this case, all have involved last minute requests by Mr. Smith and none by my office." (*Id.*)[2] The continuance was granted and Braunfeld stated that he would reschedule the matter upon hearing from Konefsky regarding Spinelli's availability. (Def.'s Mot. Ex. 48 [Sept. 29, 2006 letter from Braunfeld].)

Finally, the arbitration occurred in Spinelli's absence on December 13, 2006. (Def.'s Statement of Facts ¶¶ 84, 86; Konefsky Dep. at 123.) The arbitrators awarded Spinelli $250,000. (Def.'s Mot. Ex 50 [Arbitration Award].) State Farm received a credit of $192,688[3] for the settlement with Brown, resulting in a net award of $57,312. (*Id.*) One of the three arbitrators, Norton Freedman, who was selected by State Farm, dissented "on the basis that the recovery from the underlying tortfeasor more than adequately compensated the claimant." (*Id.*) State Farm sent a check to Konefsky in payment of the arbitration award on January 15, 2007. (Def.'s Mot. Ex. 51 [Jan. 15, 2007 letter from Augustyn to Konefsky].)

---

2. During his deposition, Konefsky agreed that, in fact, the record reveals four continuances, with two requested by each side. (Konefsky Dep. at 123.)

3. There was a slight error in the credit, which should have been $192,696.34. But State Farm did not object to the smaller amount.

Plaintiff filed her two-count Complaint in the Court of Common Pleas on February 25, 2008, seeking compensatory and punitive damages. Although both counts of the Complaint were brought pursuant to Pennsylvania's Bad Faith Statute, 42 PA. CONS. STAT. ANN. § 8371, the first Count was captioned as "including in part breach of contract claims." Plaintiff has recently explained that her Complaint "consists of two (2) 'independent' causes of action. The First Count i.e. the 'predicate action' is for 'breach of contract' while the Second Count is for 'Bad Faith' under 42 Pa.C.S.§8371." (Pl.'s Resp. at 2.) Defendant removed the case on March 27, 2008.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

At the same time, to avoid summary judgment, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989) (citing *Anderson*, 477 U.S. at 249).  Although credibility determinations remain the function of the jury, a judge considering a summary judgment motion by a defendant in a civil case "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)).

### III.  DISCUSSION

#### A.  Pennsylvania's Bad Faith Law

Pennsylvania's Bad Faith Statute provides a cause of action when an insurer "act[s] in bad faith towards the insured." 42 PA. CONS. STAT. ANN. § 8371.  In the insurance context, "bad faith" is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)).  To prevail on a bad faith claim, an insured must show: (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying those benefits. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505 (3d Cir. 2004) (citing *Terletsky*, 649 A.2d 680).  To constitute bad faith for the failure to pay a claim, the insurer must have a dishonest

purpose. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although the refusal to pay need not be fraudulent, mere negligence or bad judgment is insufficient. *Id*.

The burden rests with the insured to show bad faith by clear and convincing evidence. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 (3d Cir. 1997). To satisfy this standard, the insured must present evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)); *Terletsky*, 649 A.2d at 688 ("[B]ad faith must be proven by clear and convincing evidence and not merely insinuated."). The clear and convincing standard raises the insured's burden in opposing a summary judgment motion "because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Babayan*, 430 F.3d at 137 (internal quotations omitted). Furthermore, since the essence of a bad faith claim is the denial of benefits without good reason, an insurer is entitled to summary judgment if it can show a reasonable basis for its actions. *See Jung v. Nationwide Mut. Fire. Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997); *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa. 1998), *aff'd*, 172 F.3d 860 (3d Cir. 1998) (Table).

      **B.**     **State Farm is Entitled to Summary Judgment on Plaintiff's Bad Faith Claim**

Defendant's motion for summary judgment relies on two arguments: first, that Plaintiff cannot establish that State Farm delayed resolution of the underlying claims, and second, that State Farm acted reasonably in responding to Plaintiff's claim. The Court agrees with both arguments and accordingly grants Defendant summary judgment on Plaintiff's bad faith claim.

            *1.*    *There is no evidence that State Farm deliberately delayed the resolution of Spinelli's Claim*

Plaintiff contends that resolution of her case was delayed for six years, "during which numerous arbitration hearings were scheduled only to be cancelled at the last moment by State Farm." (Pl.'s Resp. at 2.) The record belies this claim and reveals that the neutral arbitrator cancelled the initial hearing and the parties each subsequently requested two continuances of the scheduled arbitration. Plaintiff's attorney confirmed this during his deposition. (Konefsky Dep. at 123.) The record also reveals extensive efforts on the part of State Farm and its attorney to reschedule cancelled arbitrations and – after the first neutral arbitrator ceased to serve in that role, because Konefsky had charged that he was biased and incompetent – to find a replacement neutral arbitrator. Finally, to the extent Plaintiff attributes part of the delay to what she perceives as collusion between D'Amico and State Farm, she has pointed to no evidence that supports this perception. Instead, the record reveals that D'Amico was forced to cancel the initial arbitration to attend a funeral and that he made every effort to promptly reschedule. Konefsky's questioning of this excuse and of the relationship between D'Amico and the decedent are without merit. Moreover, D'Amico testified that he had never had any conversation with Smith, prior to the cancellation of the March 5, 2002 arbitration, in which Smith requested to have the hearing continued. (D'Amico Dep. 61.) As further evidence of deliberate delay, Plaintiff contends that State Farm failed to reassign Spinelli's claim for several years after the initial claim representative left the company. (Pl.'s Statement of Disputed and Additional Facts ¶ 116.) The sole cited authority for this fact is the deposition of Plaintiff's own counsel. The record, however, clearly establishes that Spinelli's claim continued to be actively managed and was promptly reassigned when necessary. Given the overwhelming evidence in the record, and Plaintiff's failure to cite any actual evidence of deliberate

delay, the Court finds no reasonable basis to conclude that State Farm acted in bad faith and sought to deliberately delay the resolution of Plaintiff's claim.

> 2. *State Farm had a reasonable basis for its actions and therefore did not act in bad faith.*

Courts in this District have "repeatedly held that an insurance company's substantial and thorough investigation of an insurance claim, which forms the basis of its refusal to make or continue making benefit payments, establishes a reasonable basis that defeats a bad faith claim." *Wedemeyer v. U.S. Life Ins. Co. in City of New York*, Civ. A. No. 05-6263, 2007 WL 710290, at *9 (E.D. Pa. Mar. 6, 2007) (citations omitted). An "insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion." *Mann v. UNUM Life Ins. Co. of Am.*, Civ. A. No. 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003). In evaluating a claim, "[a]n insurer can rely on IMEs of qualified health professionals who examine claimants in a usual and customary manner" and who are provided by the insurer with all relevant documents. *Wedemeyer*, 2007 WL 710290, at *10. The record in this case provides copious documentation of State Farm's substantial investigation of Plaintiff's claim, which the Court discussed *supra*.

Plaintiff's response objects to State Farm's account of its treatment of the claim, and asserts that "in evaluating Mrs. Spinelli's accident related injuries and conditions and her underinsured motorist claim, State Farm knowingly and intentionally omitted entirely its own Summary of Plaintiff, Cecelia M. Spinelli's numerous accident related injuries and conditions dated July 5, 2001 and the medical report of Mrs. Spinelli's primary physician Louis H. Hirshberg." (Pl.'s Resp. at 3-4 (citations to record omitted).) This objection is baseless, as the record clearly establishes that the IME considered the thirty-three symptoms listed in the referenced summary, as well as Hirshberg's

14

medical report. The IME's initial report lists the same thirty-three complaints included in the summary, which the IME received from "the patient's paralegal," who attended the medical examination. (May 3, 2001 IME Report, at 3.) The report also confirms that the IME "reviewed a summary note authored by Dr. Hirshberg, dated 9/13/00," and summarizes the conclusions found in that document. (*Id.* at 5.) Given this record, the Court finds it quite disingenuous that Plaintiff's Response asserts that the summary and Hirshberg's report were "improperly withheld and suppressed from consideration by State Farm in evaluating her underinsured motorist claim and in the conduct of her defense medical examination." (Pl.'s Resp. at 4.) Similarly, Plaintiff's contention that "[n]owhere in the hundreds of pages filed in support of Defendant's Motion for Summary Judgment is there any reference to the aforesaid State Farm Summary of Mrs. Spinelli's injuries and conditions or to Dr. Hirshberg's medical report" is inaccurate. (*Id.*) State Farm relied, as the relevant case law permits, on the report of its IME, as well as numerous other materials developed in the course of an extensive review of Spinelli's claim. *See Wedemeyer*, 2007 WL 710290, at *10. The facts that the IME disagreed with the evaluation proffered by Dr. Hirshberg and that State Farm acted based on the IME's evaluation and other information, do not constitute bad faith.

Spinelli has clearly not met the burden of showing, by clear and convincing evidence, that State Farm acted in bad faith. In fact, Plaintiff has not provided a scintilla of evidence of bad faith.

### C.     Defendant is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim

Plaintiff's response repeats the allegation that "State Farm failed and refused to comply with the terms, provisions, requirements and conditions of the Underinsured Motorist Bodily Injury Coverage Endorsements of the Plaintiff's Pennsylvania contracts of automobile insurance with State Farm, thereby breaching same." (Pl.'s Resp. at 5.) Plaintiff cannot, at this stage in the proceedings,

rely upon mere allegations. *See Celotex*, 477 U.S. at 324 (holding that non-moving party that bears burden at trial must "go beyond the pleadings and . . . her own affidavits" in order to survive summary judgment). Nowhere does she provide specific examples of how State Farm breached the contract. In stating that State Farm was <u>compelled</u> by arbitration to pay Plaintiff $57,312, she appears to insinuate that the very fact that the parties had to go to arbitration and State Farm then lost indicates that Defendant breached the contract. (*Id.* (emphasis in original).) However, arbitration itself was a term of the contract and the record indicates that State Farm fully complied with this term, made every effort to schedule an arbitration and select a neutral arbitrator, and promptly paid the arbitration award. Thus, Plaintiff cannot make out a breach of contract claim here.

**IV.   CONCLUSION**

The record in this case contains no factual support for Plaintiff's claims. As the Supreme Court declared in *Celotex*, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." 477 U.S. at 323-24. As such, Defendant is entitled to summary judgment on all claims and the case is dismissed. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CECILIA M. SPINELLI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE CO., | : | |
| Defendant. | : | No. 08-1455 |
| | : | |

### ORDER

AND NOW, this **17th** day of **March, 2009**, upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Response thereto, and Defendant's Reply thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant State Farm's Motion for Summary Judgment (Document No. 18) is **GRANTED**.

2. The Scheduling Order of January 12, 2009 (Document No. 16) is hereby **VACATED.**

3. The Clerk of Court is directed to close this case.

BY THE COURT:

Berle M. Schiller, J.